**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HOLY GHOST CARPATHO-RUSSIAN GREEK CATHOLIC (ORTHODOX) CHURCH OF THE EASTERN RITE OF PHOENIXVILLE, PA, et al.** **Plaintiffs,** | : | **CIVIL ACTION NO. 11-1800** |
| **v.** | : | |
| **CHURCH MUTUAL INSURANCE COMPANY,** **Defendant.** | : | |

FILED
NOV 14 2011
MICHAEL E. KUNZ, Clerk
By ____ Dep. Clerk

**MEMORANDUM OPINION AND ORDER**

**RUFE, J.** **November 14, 2011**

Before the Court is an insurance coverage dispute. Insureds, Holy Ghost Carpatho-Russian Greek Catholic (Orthodox) Church of the Eastern Rite of Phoenixville, PA ("Holy Ghost Church" or "the Church") and the Church's officers and directors John Bilanin, Alex Breno, Michael Kost, John Ely, Mark Samilenko and Jeanne Bass, allege that the Church's insurer, Church Mutual Insurance Company ("Church Mutual"), has a duty to pay all attorneys' fees and other costs incurred by the individual Plaintiffs in defending an underlying lawsuit captioned St. Nicholas Brotherhood of Phoenixville, Pennsylvania, Inc. v. John Bilanin, et al. (the "underlying lawsuit" or "Brotherhood action"). Defendant Church Mutual has filed a motion to dismiss, asserting that it has paid Plaintiffs the $25,000 policy limits under the Affiliated Entity Dispute Legal Defense Coverage Endorsement of the Church's policy, and arguing that Plaintiffs have failed to state a claim for any additional coverage.

# I. BACKGROUND

## A. The Complaint in the Underlying Lawsuit

The complaint filed in the Brotherhood action is attached to the present action's Complaint, and therefore the Court may rely upon it in resolving this motion to dismiss.[1] What follows is a recitation of the allegations made in the underlying lawsuit.

The Brotherhood is a duly organized and validly existing nonprofit corporation, established in 1938 for the purpose of holding title to the Phoenix Park Property, a 19.72 acre property in Phoenixville, Pennsylvania, which was sold to the parishioners of Holy Ghost Church for the purpose of building a house of worship. The parishioners created the Brotherhood, which would have perpetual existence, to ensure that the property could not be taken from the parishioners or used for other purposes. The Articles of Incorporation set forth the names of eight Directors and thirty-six Incorporators of the Brotherhood, and stated that the Directors would serve until their successors were elected. No bylaws were adopted. In 1941, the Brotherhood leased the Phoenix Park Property to the Holy Ghost Church for a term of ninety-nine years.

It is alleged that the Brotherhood rarely met after its formation and did not elect new officers and directors over the years.[2] By 2008, the only surviving member of the original group

---

[1] Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). Additionally, the underlying complaint is relevant in determining whether Defendant has a duty to defend. See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006).

[2] Other than real estate transactions made in 1946 and 1973, the Brotherhood was not called upon to take any independent actions after it leased the Phoenix Park Property to the Church. At the time the 1946 transaction was made, the officers and directors of the Brotherhood and of the Church were identical. The complaint alleges that the Brotherhood did not meet between 1946 and 2008, but in the underlying lawsuit the court found that the Brotherhood did meet regularly during that time period, holding joint annual meetings with the Holy Ghost Church.

of directors and incorporators was Joseph Orosz.

In 2008, Holy Ghost Church devised a plan to sell a portion of the Phoenix Park Property to developers to raise money for church operations. Pursuant to this plan, the Church's officers and directors (Bilanin, Breno, Kost, Ely, Samilenko and Bass) held a congregation meeting on March 30, 2008 at which they solicited a vote of the parishioners regarding the sale of land. At that meeting, parishioner Bradford advised the congregation that the Holy Ghost Church held a lease, not title, to the Phoenix Park Property and could not sell any portion of it. Officer Bilanin then advised the congregation that the Holy Ghost Church and the Brotherhood were the same entity, and that the Church could act on behalf of the Brotherhood. A majority of the parishioners voted to sell a portion of the property.

At the time of the vote, the Brotherhood had never elected new directors, and all but one of the original directors and incorporators were deceased. The only survivor from that cohort, Joseph Orosz, opposed the sale of a portion of the Phoenix Park Property.

On July 30, 2008, Holy Ghost Church initiated a civil action against the Brotherhood in state court, asking the Court to quiet title to a portion of the Phoenix Park Property in the name of Holy Ghost Church, and to decree that the Church could act on behalf of the Brotherhood. The request for injunction was denied on October 31, 2008.[3] That action did not determine the identify of the membership, the directors, or the officers of the Brotherhood.

Shortly thereafter, Bilanin, Breno, Kost, Ely, Samilenko and Bass ("newly constituted Brotherhood") elected themselves Directors and Officers of the Brotherhood without the

---

[3] The 2008 complaint was dismissed with prejudice on March 5, 2009.

knowledge, authorization, permission or consent of the sole surviving member of the original Brotherhood group, Joseph Orosz. On December 8, 2008, Bilanin, Breno, Kost, Ely, Samilenko and Bass held a special meeting of the newly constituted Brotherhood. After that meeting, they issued a letter to the parishioners stating that the Brotherhood had passed resolutions confirming that the Board of Directors for the Brotherhood "have been, are and shall be the same as the members of the Board of Directors" of the Holy Ghost Church. On May 19, 2009, Ely issued a notice scheduling a special meeting of the Board of Directors of the newly constituted Brotherhood for May 31, 2009. At that May 31 meeting, Bilanin, Breno, Kost, Ely, Samilenko and Bass "purported to adopt bylaws on behalf of the Brotherhood." The newly constituted Brotherhood also executed an agreement of sale for 1.9 acres of the Phoenix Park Property and granted an easement to AT&T.

The sole surviving founder of the Brotherhood, Orosz, refused to recognize the newly constituted Brotherhood. On May 18, 2009, he held a meeting at which he resigned from his position on the Brotherhood and appointed MaryAnne Bradford to fill the vacancy left by his resignation (the "Orosz Brotherhood"). On July 1, 2009, Bradford held an organizational meeting, in which she adopted bylaws and nominated and elected Carney and Langner to serve with her on the Board of the Orosz Brotherhood.

The Board of the Orosz Brotherhood then filed suit, on behalf of the Brotherhood, against Bilanin, Breno, Kost, Ely, Samilenko and Bass. The underlying complaint alleged that the property sale and the AT& T easement, as well as other actions, were entered into without the authorization of the "true" Brotherhood (i.e. the Orosz Brotherhood). The Brotherhood action sought declaratory judgment holding that: (1) Until May 18, 2009, Orosz was the only lawful

Director/ Trustee of the Brotherhood; (2) On May 18, 2009, Bradford replaced him as the sole Director of the Brotherhood, joined by Langner and Carney on July 1, 2009; (3) These three individuals have authority to act on behalf of the Brotherhood; (4) Bilanin, Breno, Kost, Ely, Samilenko and Bass were not lawfully elected Directors or Officers, and have no legal authority to act on behalf of the Brotherhood.

The complaint in the Brotherhood action also sought to enjoin Bilanin, Breno, Kost, Ely, Samilenko and Bass from holding themselves out as officers or directors of the Brotherhood and from acting on behalf of the Brotherhood.

## B. The Outcome of the Underlying Lawsuit

The Brotherhood action was resolved by Judge Griffith of the Court of Common Pleas of Chester County, Pennsylvania in favor of then-defendants Bilanin, Breno, Kost, Ely, Samilenko and Bass.[4] After a non-jury trial, Judge Griffith found, based *inter alia* on bylaws adopted in 1953 and 2003 by Holy Ghost Church and on the testimony of parishioners Orosz, Bradford, Detwiller and Carney, that all Holy Ghost Church parishioners in good standing were members of the Brotherhood. Therefore, actions taken by the individuals constituting the Orosz Brotherhood, ostensibly on behalf of the Brotherhood but without the parishioners' consent, were a nullity. Judge Griffith found that those individuals were not officers or directors of the Brotherhood and had no authority to act on the Brotherhood's behalf. As the Brotherhood and the Church had joint annual meetings at which officers and directors were elected by the parishioners, the judge held that the officers and directors of the Brotherhood and the Church

[4] Decision of Judge Edward Griffith, Court of Common Pleas, Chester County, Pennsylvania (see Doc. No. 9, Exhibit 1)

were identical. Therefore, the acts of defendants, as duly elected officers and directors of the Church and the newly constituted Brotherhood, were binding. In particular, the decision to sell a portion of the Phoenix Park Property was valid and binding on the Brotherhood.

### C. The Insurance Policies at Issue

The defendants in the Brotherhood action, Bilanin, Breno, Kost, Ely, Samilenko and Bass, are now seeking a declaratory judgment that they are entitled to insurance coverage for all costs they incurred in the defense of the underlying lawsuit. Church Mutual's duty to defend an insured is triggered if a complaint alleges an injury which is within the scope of the insurance policy(ies). The policies at issue here are two commercial multi peril policies, one issued to the Brotherhood[5] and the second to the Holy Ghost Church, and one umbrella liability policy issued to the Holy Ghost Church. The multi peril policies contain identical coverage for directors, officers and trustees ("D&O Coverage"),[6] which includes the following language: "We will pay on your behalf those sums that any of your 'Directors, Officers or Trustees' become legally obligated to pay for 'loss' arising from any claim or claims because of injury arising out of a 'wrongful act' to which this insurance applies . . . [and we] will have the right and duty to defend the insured against any 'suit' seeking payment for 'loss' and to pay for the 'defense expenses.'"

The D&O Coverage is limited, however, by various exclusionary provisions and endorsements. Coverage for disputes over "any claim involving title to the Named Insured's

[5] Because the Brotherhood was the only named plaintiff in the underlying dispute, and the policy issued to the Brotherhood does not cover the cost of litigating as a plaintiff, Church Mutual argues that this policy cannot apply. This argument will be addressed below.

[6] In addition to the D&O coverage, which includes coverage for legal defense costs, the policies also contain a Legal Defense Coverage Form, which is subject to a limit of $5,000.

property" are explicitly excluded from D&O Coverage under exclusion (f). In addition, the D&O coverage is modified by the Affiliated Entity Dispute Legal Defense Coverage Endorsement Clause ("Affiliated Entity Endorsement"), which limits defense coverage to $25,000 in certain lawsuits filed against the insured (or its directors and officers) by affiliated entities.[7]

Church Mutual has paid Plaintiffs $25,000 for the defense of the Brotherhood action, pursuant to the Affiliated Entity Endorsement. The Court must examine the facts alleged in the underlying complaint and the language of the relevant insurance policies to determine whether Plaintiffs are entitled to additional coverage for the defense of the Brotherhood action.

## II. STANDARD OF REVIEW

Dismissal of a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" does not possess enough substance to show that plaintiff is entitled to relief.[8] A Court may look to the facts alleged in the complaint, its attachments, and documents incorporated into the complaint by reference or explicitly relied upon in the complaint, but may not consider matters extraneous to the pleadings.[9] In determining whether a motion to dismiss should be granted the court must consider those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[10]

---

[7] The definition of "affiliated entities" and the types of disputes covered under the Affiliated Entity Endorsement will be covered in the Discussion, supra.

[8] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[9] Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Winer Family Trust v. Queen, 503 F.3d 319, 328 (3d Cir. 2007); U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

[10] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

Something more than a mere *possibility* of a claim must be alleged; plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[11] The complaint must set forth "direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory."[12] The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[13] Furthermore, courts are not bound to accept as true legal conclusions couched as factual allegations.[14]

## III. DISCUSSION

Under Pennsylvania law, the duty of an insurance company to defend an insured is distinct from and broader than the duty to indemnify an insured.[15] The duty to defend is determined solely by the factual allegations set forth in the complaint for the underlying lawsuit and the terms of the applicable insurance policy.[16] In determining whether an insurer has a duty to defend, a court may not consider facts ascertained at trial, nor the outcome of the underlying lawsuit.[17] Rather, the court must decide only whether the facts alleged in the complaint, if true, would potentially bring the claims within the policy's coverage.[18] Accordingly, the court must

---

[11] Twombly, 550 U.S. at 570.

[12] Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

[13] Id. at 562 (citing McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

[14] Id. at 555, 564.

[15] Frog, Switch & Mfg. Co. v. Travelers Ins. Co., 193 F.3d 742, 746 (3d Cir. 1999); Erie Ins. Exch. v. Claypoole, 673 A.2d 348, 355 (Pa. 1996).

[16] Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 896 (Pa. 2006); Madison Constr. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 109 (Pa. 1999); Aetna Cas. & Sur. Co. v. Roe, 650 A.2d 94, 98 (Pa. Super. 1994).

[17] Aetna, 650 A.2d at 99.

[18] Id.

compare the terms of the policies with the allegations set forth in the underlying complaint (that is, the complaint in the Brotherhood action).

Defendant Church Mutual Insurance Co. has provided $25,000 in coverage for Bilanin, Breno, Kost, Ely, Samilenko and Bass's defense in the Brotherhood action, pursuant to the Affiliated Entity Endorsement to the Holy Ghost Church's policy. As Plaintiffs have received the policy limit under the Affiliated Entity Endorsement, the issue before this Court is whether Church Mutual is obligated to further indemnify Bilanin, Breno, Kost, Ely, Samilenko and Bass for the costs of defending the underlying Brotherhood action under other provisions of the insurance policies issued to the Holy Ghost Church and/or to the Brotherhood, such as the D&O coverage and/or the Legal Defense Coverage provisions.

**A. <u>Does the Policy Issued to the Brotherhood Apply?</u>**

Defendant argues that the Church Mutual policies issued to the Brotherhood do not apply here, because the Brotherhood was the named plaintiff in the Brotherhood Action, and the Brotherhood policy clearly does not cover the litigation costs incurred by the insured in bringing a lawsuit against a third party as a plaintiff. Plaintiffs do not disagree with Defendant's interpretation of the policy, but argue that the plaintiff in the underlying case was not, in fact, the Brotherhood, but a group of "interlopers" posing as the Brotherhood.[19] Because Judge Griffith found that the defendants in the Brotherhood action were the true officers of the Brotherhood, Plaintiffs argue, Church Mutual had a duty to defend those defendants under the Brotherhood

---

[19] This is not an accurate characterization of the court's finding in the underlying case. Judge Griffith found that all members of the Holy Ghost Church were also members of the Brotherhood. Therefore, the officers and directors of the Orosz Brotherhood were found to be *members* of the Brotherhood, but not *officers* of the Brotherhood.

policy.

Because the duty to defend is determined solely by the factual allegations set forth in the complaint for the underlying lawsuit, and not by the findings of fact or conclusions of law, and because the Brotherhood was the sole named Plaintiff in the Brotherhood action, the Court finds that Plaintiffs are not entitled to defense coverage for the underlying lawsuit under the policy issued to the Brotherhood. Therefore, the Court need only determine Church Mutual's duty to defend under insurance policies issued to Holy Ghost Church.

**B. Was the Underlying Dispute an Excluded Claim Involving Title to Property?**

Plaintiffs argue that pursuant to the Church's D&O Coverage, Church Mutual is required to fully compensate them for the cost of defending the underlying lawsuit. Defendant counters that the D&O Coverage does not apply to the Brotherhood action because it falls under exclusion (f) as a claim involving title to the named insured's property. The Court disagrees. In a 2008 action preceding the Brotherhood action, the Court of Common Pleas found that the Brotherhood held title to the Phoenix Park Property, and that the Holy Ghost Church and the Brotherhood were separate entities.[20] Therefore, the Brotherhood action was not a claim to settle questions of property *ownership*. Rather, the Brotherhood action was a claim to settle questions of *membership in* and *leadership of* the Brotherhood. While ultimately the outcome of the suit would impact the conveyance of the Phoenix Park Property, the Brotherhood action was not a dispute over title to the named insured's property. Thus, exclusion (f) does not apply.

**C. Was the Underlying Dispute an Affiliated Entity Dispute?**

Defendant then argues that its payment of $25,000 under the Affiliated Entity

---

[20] See, supra, page 3.

Endorsement fully satisfies its obligations under the Church's insurance policies. The Affiliated Entity provision clearly states that it modifies D&O Coverage when a loss arises from an affiliated entity dispute. Substantively, the provision states:

> We will pay on your behalf and on behalf of your "Directors, Officers or Trustees" "defense expenses"(but not other items of "loss") that you or your "Directors, Officers or Trustees" become legally obligated to pay arising out of a "wrongful act" that results in a claim or claims made against you or your "Directors, Officers or Trustees" by an "Affiliated Entity" that alleges one or more "Affiliated Entity Disputes." The limits of insurance shown in the Declarations Page and the rules below fix the most we will pay for "Affiliated Entity Dispute" "defense expenses."

The endorsement defines an "Affiliated Entity" as "any entity or organization with which the Named Insured is affiliated or associated, or which the Named Insured governs or is governed by, owns or is owned by, controls or is controlled by. . . ." The parties agree that the Brotherhood was created by the parishioners of the named insured (Holy Ghost Church) to hold property for and lease property to the Church. The Brotherhood action was, on its face, a lawsuit brought by the Brotherhood against the directors and officers of the Church seeking a declaratory judgment that church members Bradford, Langner and Carney were the lawful directors and officers of the Brotherhood, and an injunction barring the Church directors and officers from holding themselves out as directors and officers of the Brotherhood and from acting on behalf of the Brotherhood.

Plaintiffs argue that the plaintiff in the Brotherhood action was not an affiliated entity, but rather a group of renegade strangers with no authority to act on behalf of the Brotherhood, who merely appropriated the name "the Brotherhood." Although Judge Griffith ruled that the plaintiff in the Brotherhood action did not have authority to act on behalf of the Brotherhood, the duty to

defend is determined based solely on the four corners of the underlying complaint, and the decision of the court in the underlying lawsuit is not relevant to the duty to defend.[21] As the underlying complaint stated a claim by "the Brotherhood" against the Church's officers and directors, on its face it is a dispute between "affiliated entities."

The Court must, then, examine whether the Affiliated Entity Endorsement covers the particular claims which constitute the substance of the underlying legal dispute. Under the Endorsement, an "Affiliated Entity Dispute" is defined as:

> any claim or claims made against an insured by an "Affiliated Entity" that arises out of a dispute involving one or more of the following: a. ownership, title, control, or use or return of real or personal property, donations, or financial assets; . . . f. the appointment or election of "Directors, Officers or Trustees" or other positions; g. the interpretation or application of articles of incorporation, charters, association agreements, constitutions, bylaws, or other governing documents. . .

On its face, the underlying complaint was a dispute between the Brotherhood and the officers and directors of the Holy Ghost Church (Bilanin, Breno, Kost, Ely, Samilenko and Bass) over the appointment or election of Directors, Officers or Trustees to the Brotherhood, and the process used to select the leadership of the Brotherhood. In essence, it was a dispute over which members of the Holy Ghost Church and the Brotherhood[22] would control the Brotherhood: the descendants of the original founders of the Brotherhood (as alleged by the plaintiff in the underlying suit), or the present day officers and directors of the Church (as argued by defendants in the underlying suit). Resolution of the leadership and control issues was a necessary predicate to the vote on whether to convey a portion of the Phoenix Park Property for the benefit of Holy

---

[21] Aetna, 650 A.2d at 99.

[22] As previously noted, all members in good standing of the Church are also members of the Brotherhood.

Ghost Church. Therefore, in Church Mutual's view, the underlying complaint was a covered dispute under subsections (a),(f) and (g) of the Affiliated Entity Endorsement, and accordingly Church Mutual paid Plaintiffs the policy limits ($25,000) of the Endorsement.

The Court is satisfied that the Brotherhood action was fundamentally a dispute about the appointment or election of directors, officers or trustees, that the suit required interpretation or application of governing documents and agreements, and that the suit implicated control of real property. As the dispute at issue falls within the scope of the Affiliated Entity Endorsement, and as the Affiliated Entity Endorsement modifies the right to benefits under the D&O provisions, the Court finds, as a matter of law, that Plaintiffs are not entitled to additional benefits under the D&O provisions in this case and should only recover up to the policy limits under the Affiliated Entity Endorsement.

### D. Are Plaintiffs Entitled to Additional Coverage under the Legal Defense Provision?

The Legal Defense Coverage provision provides up to $5000 in coverage for defense costs not otherwise covered by Church Mutual or another insurer. It explicitly excludes coverage for those defense costs which an insurer is obliged to cover under another policy or endorsement.[23] Recovery under the Legal Defense provision is therefore precluded if defense costs are covered by the Affiliated Entity Endorsement. Moreover, the Legal Defense coverage is limited to $5000 per defensible incident, and Church Mutual has already paid $25,000 to Plaintiff to cover the cost of its defense of the Brotherhood action.

---

[23] Legal Defense Coverage Form, Part A(2), Exclusion b(1).

## IV. CONCLUSION

Because Church Mutual has fulfilled its contractual duty to defend Plaintiffs, Plaintiffs' claims for declaratory judgment, breach of contract and bad faith must be dismissed. An appropriate Order follows.